RECEIVED
IN LAKE CHARLES, LA.

JUL -7 2014

TONY R. MOORE, CLERK
BY_____
                DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MATTHEW RICHARD | * | CIVIL ACTION NO. 2:13-cv-03086 |
| Plaintiff | * | |
| V. | * | |
| G4S GOVERNMENT SOLUTIONS, INC., DM PETROLEUM OPERATIONS COMPANY, ORION MARINE CONSTRUCTION, INC., ABC INSURANCE COMPANY and XYZ INSURANCE COMPANY | * | JUDGE MINALDI |
| Defendants | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is the defendant's, Orion Marine Construction, Inc. ("Orion"), Motion to Dismiss for Failure to State a Claim [Doc. 18], to which the plaintiff, Matthew Richard, has filed a Memorandum in Opposition [Doc. 22] and Orion has filed a Reply [Doc. 23]. On May 16, 2014, leave was granted for Matthew Richard (plaintiff) to file his First Amending Complaint [Doc. 36]. For the following reasons, Orion's Motion to Dismiss [Doc. 18] is hereby **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

At the time of his alleged injuries, the plaintiff was employed by G4S Government Solutions, Inc., as a security officer assigned to patrol the pumping station on the United States Intracoastal Canal near Hackberry, Louisiana.[1] On November 14, 2012, while abroad the vessel SPR10 in United States navigable waters,[2] the plaintiff alleges that the SPR10's captain, a DM

---

[1] Am. Compl. [Doc. 36] at ¶ 6-8.
[2] Id.

1

Petroleum Operations Company (DM Petroleum) employee, ordered the plaintiff to disembark in an undesignated area because a barge was tied to the dock, thereby preventing the plaintiff's vessel from accessing either the dock or the accommodation ladder.[3] The barge, owned and operated by Orion, was allegedly positioned in front of the only accessible dock from the Intracoastal Canal to the pumping station.[4]

The captain of the SPR10 allegedly ordered those on the plaintiff's vessel to disembark, providing no notification to the barge that it was preventing the SPR10 from docking.[5] As a result, the plaintiff was forced to disembark onto a "rock jetty/embankment" that was not a designated area for crews to embark or disembark.[6] After the plaintiff finished his security patrol, he "was forced to walk back across the rock jetty/embankment" to board the SPR10.[7] As he crossed the rocky area, the plaintiff allegedly slipped and fell on rocks, sustaining injuries.[8]

On November 14, 2013, the plaintiff filed suit invoking the court's federal admiralty jurisdiction, under 28 U.S.C. § 1333, in the United States District Court for the Western District of Louisiana.[9] Initially made defendants were the United States Department of Energy; the plaintiff's employer at the time of the incident, G4 Government Solutions, Inc., formerly known as Wackenhut Services, Inc.; the operator of the vessel that the plaintiff was assigned to, DM Petroleum, formerly known as DynMcDermott; the barge owner, Orion; and a number of unidentified insurers.[10]

---

[3] Am. Compl. [Doc. 36], at ¶ 12-13.
[4] *Id.*
[5] *Id.* at ¶ 13.
[6] *Id.*
[7] *Id.* at ¶ 14.
[8] *Id.*
[9] *See generally* Compl. [Doc. 1].
[10] Compl. [Doc. 1], at ¶ 1.

2

On May 20, 2014, the plaintiff's Motion to Amend [Doc. 33] was granted,[11] and his Amended Complaint [Doc. 36] was entered into the record, listing only the United States and Orion as defendants.[12] On May 16, 2014, the same date that he filed his Motion to Amend [Doc. 33], the plaintiff filed an Unopposed Motion to Dismiss the United States of America Without Prejudice [Doc. 34]. In that Motion [Doc. 34], the plaintiff indicated that, although the United States is the proper defendant—in its capacity as a principal for its agent, DM Petroleum—the claim against the United States is nevertheless premature until the plaintiff has complied with the procedural requirements of the Admiralty Extension Act, 46 U.S.C. § 30101.[13] The plaintiff's Motion [Doc. 34] was granted, and the claims against the United States were dismissed on May 30, 2014,[14] leaving only the plaintiff's claims against Orion. Orion's Motion to Dismiss the plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)6 is presently before the court.

## LAW AND ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a plaintiff's claim against it for "failure to state a claim upon which relief can be granted." *See* FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) motions are generally "viewed with disfavor and rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citations omitted). To survive a Rule 12(b)(6) motion, the plaintiff must allege facts in "support of his claim which would entitle him to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007)

---

[11] *See* Electronic Order [Doc. 35].
[12] Specifically, it lists the United States as a defendant "individually and as the proper party defendant for all claims involving its agent DM Petroleum Operations Company, a governmental contractor for whom the United States is responsible." Am. Compl. [Doc. 36], at ¶ 1.
[13] Memo. in Supp. of Unopposed Mot. to Dismiss [Doc. 34-1], at 1. *See also* 46 U.S.C. § 30101(c)(2) (stating that a civil action against the United States for injuries incurred on land by a vessel in navigable waters "may not be brought until the expiration of the 6-month period after the claim has been presented in writing to the agency owning or operating the vessel causing the injury or damage").
[14] Order [Doc. 37].

(citation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).

To satisfy the plausibility requirement, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citations omitted). "[C]onclusory allegations, unwarranted factual inferences, or legal conclusions" are insufficient. *Id.* (*quoting Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). Furthermore, courts are limited to consideration of the "the contents of the pleadings" and attachments thereto when considering a Rule 12(b)(6) motion to dismiss. *See* FED. R. CIV. P. 12(b)(6); *Collins*, 224 F.3d at 498 (citation omitted).

"The analysis of a maritime tort is guided by general principles of negligence law." *Consol. Aluminum Corp. v. C. F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir.1985) (citations omitted). "To establish maritime negligence, a plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000) (*quoting In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.1991)) (alteration in original).

The Fifth Circuit has affirmed that a "legal cause" standard is appropriate to assess maritime tort claims. *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978) (*citing Spinks v. Chevron Oil Co.*, 507 F.2d 216, 222-23 (5th Cir. 1975)). When determining liability in admiralty tort cases, the "fault which produces liability must be a contributory and proximate

cause of the collision, and not merely fault in the abstract." *Am. River Transp. Co. v. Kavo Kaliakra SS*, 148 F.3d 446, 450 (5th Cir. 1998) (*quoting Inter–Cities Navig. Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir.1979)). Moreover, the Fifth Circuit has held that "[t]o give rise to liability, a culpable act or omission must have been 'a substantial and material factor in causing the [injury].'" *Kavo Kaliakra SS*, 148 F.3d at 450 (*quoting Inter–Cities Navig. Corp.*, 608 F.2d at 1081). "'Substantial' means more than 'but for' the negligence, the harm would not have resulted, and more than merely negligible negligence." *Chavez*, 567 F.2d at 289 (citation omitted).

In the context of maritime torts, a foreseeability inquiry addresses whether "the harm alleged bear[s] some proximate relationship with the negligent conduct such that it can reasonably be said to be within the 'scope of the risk' created by that conduct." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 212 (5th Cir. 2010) (*citing Consol. Aluminum Corp.*, 833 F.2d 65, 67 (5th Cir. 1985)). Furthermore, the Fifth Circuit has affirmed that foreseeability is not based upon the risk of danger created by the defendant's actions, but upon whether the effects of those actions could be reasonably anticipated. *Id.* For instance, in *In re Great Lakes Dredge & Dock Co., L.L.C.*, Hurricane Katrina victims filed suit against several companies that had conducted dredging operations along the Mississippi River pursuant to a contract with the U.S. Army Corps of Engineers. *Id.* at 205. The claimants alleged that the flood damage they sustained when the levees breached was caused by erosion of the wetlands which had resulted from the defendants' dredging operations. *Id.* The Fifth Circuit, however, found that the defendants were not liable, because "it was not foreseeable that the marginal erosion caused by any act of negligence . . . would substantially affect the impact of the hurricane such

that the failure of the levee systems and subsequent flooding would be the probable result." *Id.* at 210, 213.

In *Koserkoff v. Chesapeake & Ohio Railway Company*, the Sixth Circuit was presented with a somewhat similar issue to the instant case. *See generally Koserkoff v. Chesapeake & Ohio Ry. Co.*, 427 F.2d 1049, 1050 (1970). The plaintiff therein, a seventy-three year old night porter aboard a vessel, was injured when he jumped from a crane as he disembarked from his vessel. *Koserkoff*, 427 F.2d at 1050. A ladder had been lowered from the vessel, but the crane, positioned at the bottom of the ladder, had prevented the crew members from stepping directly onto the dock. *Koserkoff*, 427 F.2d at 1050. When the plaintiff climbed down the ladder and jumped from the crane, he sustained injuries to his heel. *Id.* The plaintiff contended that he was forced to jump from the ladder because the crane was obstructing his exit. *Id.* The court conceded that, although the location of the crane affected the choices with which the plaintiff was presented in making his departure, the plaintiff was nevertheless individually responsible for his actions. *Id.* at 1051. The positioning of the crane therein was not found to be the proximate cause of plaintiff's injuries. *Id.* at 1051. Further, the court pointed out that the plaintiff had other options at his disposal, such as remaining on the crane until a safe option for disembarking was found, or remaining on the ladder and thus foregoing stepping onto the crane in the first place. *Id.* at 1051-52.

Orion argues that the plaintiff has not alleged a legally cognizable claim for negligence, as evidenced by his near total lack of supporting case law.[15] In illustrating what Orion contends are examples of the plaintiff's conclusory allegations, Orion cites to language in the plaintiff's complaint which states that Orion's barge was "negligently blocking" the dock, and that Orion

---

[15] Memo. in Supp. [Doc. 18-1], at 3-4.

6

violated the "duty of good seamanship," without explaining the basis for those contentions.[16] Additionally, Orion points out that the captain of the plaintiff's vessel failed to even notify anyone onboard Orion's barge that the barge was allegedly blocking the dock.[17]

Accepting all of the plaintiff's allegations as true, Orion could not have reasonably foreseen that the plaintiff's injuries would be the probable result of Orion's actions in merely occupying a dock. It would seem a strange policy to hold vessels liable for properly docking in a legal manner where they have received no notice from other vessels that others wish to use the dock. Like the defendant in *Koserkoff*, Orion's actions, although inhibiting the ingress and egress of the plaintiff, did not constitute an act of negligence. While *Koserkoff* is distinguishable in that the plaintiff therein was not directed by the captain to disembark, this difference speaks more to the issue of employer liability than to whether or not Orion's actions were the proximate cause of the plaintiff's injuries herein.[18]

Orion also maintains that there is no duty to provide ingress or egress to the crewmembers of other vessels.[19] The plaintiff cites *Cenac Towing Company, Incorporated v. Neal*, No. 07-1458, 2008 U.S. Dist. LEXIS 6381 (E.D. La. Jan. 29, 2008), for the proposition that such a duty exists.[20] However, the plaintiff interprets *Cenac*'s holding for something broader than it is.

In *Cenac*, the plaintiff sustained injuries and nearly drowned while using a skiff to access his vessel as a result of the dock owner's refusal to provide the plaintiff with ingress and egress to his vessel. *Cenac*, 2008 WL 2623001, at *1. The *Cenac* court was asked to determine the

---

[16] Compl. [Doc. 1], ¶ 15, 23; Orion Mot. to Dismiss [Doc.18], at 3-5.
[17] Orion Mot. to Dismiss [Doc. 18], at 5.
[18] While the plaintiff's employer may, or may not, bear some culpability in this regard for allegedly directing the plaintiff to disembark and embark as he did, the court passes no opinion on that issue herein, as that matter is not properly before the court.
[19] Reply [Doc. 23], at 2.
[20] *See* Opp. [Doc. 22], at 4.

narrow issue of whether such an injury would be considered a maritime issue that would fall under the court's admiralty and maritime jurisdiction. *Id.* *Cenac* does not provide a basis for asserting the existence of a duty upon non-employer vessels to provide for the ingress and egress of other vessels under all circumstances. Although courts have recognized a duty on *employers* to provide for the safe ingress and egress of their employees in certain circumstances, *see, e.g., Superior Oil Company v. Trahan*, 322 F.2d 234, 235 (5th Cir. 1963) (recognizing an employer's duty under the Jones Act to provide "a seaman a reasonably safe means of boarding and departing from the vessel"), this duty does not necessarily extend to non-employers. *See generally Koserkoff*, 427 F.2d 1049.

Accepting all of the plaintiff's allegations as true, the plaintiff has not alleged facts sufficient to find either that Orion breached any duty owed to the plaintiff, or that Orion's conduct was the proximate cause of the plaintiff's alleged injuries. Accordingly,

**IT IS ORDERED** that Orion's Motion to Dismiss [Doc. 18] be and hereby is **GRANTED**, and the plaintiff's claims against Orion are hereby **DISMISSED, WITH PREJUDICE.**

Lake Charles, Louisiana, this \_\_\_ day of _____, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE